# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2015

Lyle W. Cayce
Clerk

No. 14-70021

RICHARD ALLEN MASTERSON,

Petitioner-Appellant

v.

WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correction Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2731

Before OWEN, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Richard Allen Masterson was convicted by a Texas state court of capital murder and sentenced to death for the 2001 strangulation death of Darin Shane Honeycutt. Following an unsuccessful direct appeal and state habeas proceedings, Masterson petitioned the federal district court for habeas relief on several grounds. The district court denied relief and also denied a certificate

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70021

of appealability ("COA").  Masterson filed a timely notice of appeal and now seeks a COA from this court on four issues.  For the reasons set forth below, we DENY his request for a COA.

I.      Facts

Masterson met Honeycutt at a Houston, Texas, bar.  The two men went back to Honeycutt's apartment.   The State alleges that Masterson put Honeycutt into a chokehold and killed him in order to rob Honeycutt of his car and other valuables.  Masterson contends that the chokehold was part of a sex act that went awry resulting in the unintentional death.  Masterson fled the scene in Honeycutt's car after taking some items.  Ultimately, Masterson was apprehended driving a different stolen car in Florida, and Houston Police Detective David Null went to Florida to interview him.  During that interview, Masterson confessed to the crime, stating that he intended to kill Honeycutt to rob him.  As more fully detailed below, the voluntary nature of the confession was a disputed matter ultimately resolved by the state court in the State's favor.

At trial, the State's theory was that Masterson intended to kill Honeycutt in order to rob him. Masterson testified in his own defense during the guilt-innocence phase, contending that Honeycutt's death was the accidental result of a sex act.  The jury returned a verdict of guilty on the capital murder charge.

In the ensuing punishment phase, records from Masterson's time as a juvenile (the "TYC Records") were placed into evidence but little utilized by either side.  The State presented evidence of Masterson's violent acts against others.  The defense presented testimony from two deputies who indicated that Masterson had been a compliant prisoner in their care and testimony from Masterson's sister who described a bad childhood at the hands of their abusive father.  Against his attorneys' advice, Masterson again took the stand.  During

2

No. 14-70021

his testimony, he admitted (in so many words) to being a future danger to others and that there was no mitigating evidence in his favor. The jury found future dangerousness and lack of mitigating factors. Masterson was sentenced to death.

Pertinent to the issues here, on direct appeal, Masterson challenged the admission of his confession to Detective Null. In his first state habeas application, he claimed ineffective assistance of counsel for failure to develop and present certain mitigating evidence. He also argued that counsel was ineffective for failing to introduce the TYC Records. During the first state habeas proceeding, everyone apparently labored under the erroneous impression that the TYC Records had not been admitted into evidence. It was not until the federal habeas proceeding that it was noticed that these records were introduced as Exhibit 54 at the beginning of the punishment phase of his trial. Masterson returned to state court to raise the contention that counsel was ineffective for failing to prepare a rebuttal to the State's use of the admitted records during the punishment phase; the state court dismissed this application as an abuse of the writ.

Before the federal district court, Masterson raised several issues including the four questions, in the order asserted in the COA application, on which he seeks a COA from this court:

1.  Whether Masterson was deprived of his Sixth Amendment right to the effective assistance of counsel at the punishment phase of the trial when trial counsel failed to adequately develop and present mitigating evidence.

2.  Whether Masterson's Fifth Amendment right was violated by the admission of his confession which was given in exchange for a promise by police.

## No. 14-70021

3. Whether trial counsel [and by extension habeas counsel] provided ineffective assistance of counsel under the Sixth and Fourteenth Amendments for failing to introduce evidence of organic brain dysfunction that "could would [*sic*]" have been admissible under *Jackson v. State.*

4. Whether trial counsel [and by extension habeas counsel] were ineffective under *Rompilla v. Beard* for failing to adequately investigate and prepare a rebuttal against the State's use of juvenile records during the punishment phase of his trial.

Issues 1 and 4 are asserted with respect to Masterson's sentence, while 2 and 3 are asserted with respect to his guilt. Thus, we address those two issues first.[1]

II.     Standards for a COA

The standards for granting a COA in a death penalty case arising from a state court judgment are well-established. *Beatty v. Stephens*, 759 F.3d 455, 461–62 (5th Cir. 2014) (outlining procedures). A COA must be based upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a habeas petitioner must demonstrate that "jurists of reason" would find the district court's decision "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The decision at this stage is a threshold one; thus, in arriving at our decision, we must not actually

---

[1] Masterson argues that the state proceedings were "inadequate" because the state court did not conduct a live hearing. It is unclear what relief he seeks in this regard. To the extent he contends that he was, therefore, unable to fully develop his claim, 28 U.S.C. § 2254(e)(2)(B), he fails to cite to anything in the record showing a proper request for such a live hearing under state law. *Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."); *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011) (limiting review under 28 U.S.C. § 2254(d) to consideration of the state court record).

4

No. 14-70021

adjudicate the merits of the claim. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). In a death penalty case, any doubts about whether to grant a COA should be resolved in favor of granting it. *Gomez v. Quarterman*, 529 F.3d 322, 326 (5th Cir. 2008).

Nonetheless, our COA analysis is guided by the deferential standards mandated by the Antiterrorism and Effective Death Penalty Act ("AEDPA") contained in 28 U.S.C. § 2241 *et seq.* Thus, "[w]e evaluate the debatability of [Masterson's] constitutional claims through the lens of AEDPA's highly deferential standard." *Beatty*, 759 F.3d at 462.

> An application for a writ of habeas corpus [on a state judgment adjudicated on the merits] shall not be granted . . . unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). With these standards in mind, we turn to an analysis of Masterson's application.

III. Discussion

A. Fifth Amendment: Admission of Confession

Masterson contends that the state trial court violated his Fifth Amendment rights by admitting his confession to Detective Null during the guilt-innocence phase of his trial. He bases his arguments upon the allegation that promises were made to him in exchange for his confession that amount to improper coercion in violation of the Fifth Amendment.[2] Specifically, he contends that he was told that if he confessed to capital murder, his nephew—

---

[2] Masterson mentions, but does not brief or renew, his allegation that his confession was taken in violation of his right to counsel. Therefore, we address only the promise allegation.

who was apprehended in the first stolen car which contained drugs—would go free.

We have held that certain types of statements by law enforcement officials can constitute the type of coercion that results in suppression of a confession. *Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir. 1987). Promises may constitute such a statement if they are so attractive that they make any subsequent confession involuntary. *See, e.g.*, *United States v. Rogers*, 906 F.2d 189, 192 (5th Cir. 1990) (false promise of non-prosecution rendered subsequent statements involuntary for purposes of a motion to suppress).

Masterson's arguments about his confession were the subject of a pretrial hearing before the state trial court and, thereafter, were presented to the jury at his trial. Conflicting evidence was presented. Detective Null stated that he did not promise to do anything with respect to the nephew except pass along Masterson's statement that Masterson, not the nephew, was the owner of the drugs.

Masterson faces a high hurdle under section 2254(d)(2) in overcoming adverse factual findings. At most, he has shown that there was disputed evidence of what happened. Accepting Null's version of what happened as true, which the state court judge and jury were entitled to do, there was no coercive promise. Under section 2254(d)(1), he has not explained how the state court's ruling runs afoul of a Supreme Court opinion. *See Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (reversing Sixth Circuit in a habeas proceeding challenging a state conviction for relying on a "categorical" rule regarding when a suspect was "in custody" for *Miranda*[3] purposes that had not been announced by the Supreme Court). Reasonable jurists would not debate the district court's

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

No. 14-70021

assessment of the state court's determination of the voluntariness of his confession. Accordingly, we deny a COA on this ground.

### B. Ineffective Assistance of Counsel regarding Organic Brain Dysfunction Evidence

Masterson argues that his attorneys were ineffective for failing to introduce evidence during the guilt-innocence phase that he suffered from organic brain dysfunction in an effort to show that he could not (or did not) form the requisite intent to kill sufficient to support a verdict of capital murder, relying on *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005) (allowing a defendant to present diminished mental capacity evidence to counter the State's evidence of his state of mind). Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *Strickland*'s review of counsel's conduct is deferential and, because of AEDPA's deferential review standard, our review of *Strickland* claims for habeas petitions challenging state court judgments is "doubly" deferential. *Beatty*, 759 F.3d at 463.

Masterson relies upon the unsworn report of Dr. Jerome Brown to support his claim of organic brain dysfunction. Dr. Brown's report, offered in the first state habeas proceeding,[4] states: "It is possible that some type of brain anomaly or dysfunction has been present for some time and prior to the offense." Dr. Brown does not opine that this dysfunction impacted Masterson's ability to control his conduct or form an intent to kill. Nonetheless, Masterson faults trial counsel for not discovering and developing this "evidence." He also states that his TYC psychiatrist, Dr. Day, noted "probable mild organic brain dysfunction." Again, he asserts that this evidence should have been developed.

---

[4] The report was proffered as part of Masterson's argument that his counsel failed to develop a proper mitigation case.

7

No. 14-70021

The State contends that this argument has been procedurally defaulted by the failure to raise it in the first state habeas proceedings.[5] Masterson responds that any such failure would itself be ineffective assistance of counsel—this time, state habeas counsel—entitling him to relief under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). These cases hold that in certain circumstances, ineffectiveness of state habeas counsel may be grounds to find cause and prejudice to excuse a procedural default and reach the merits of an otherwise defaulted ground.

The federal district court analyzed the organic brain dysfunction argument on the merits and concluded that, even now, Masterson has failed to proffer any evidence beyond the speculation contained in the Brown and Day reports that Masterson suffered from an organic brain dysfunction that affected his conduct or mindset on the date in question. *Masterson v. Thaler*, No. 4:09-CV-2731, 2014 U.S. Dist. LEXIS 26226, at *76 (S.D. Tex. Feb. 28, 2014). Thus, the district court reasoned, "[t]he state habeas court was not unreasonable in finding Masterson's unverified claim of organic brain damage to be speculative." *Id.* We conclude that reasonable jurists would not debate this conclusion and, thus, need not analyze the *Martinez* procedural default question. Accordingly, a COA on this ground must be denied.

C. Ineffective Assistance of Counsel in Mitigation Evidence

Turning to the punishment phase, Masterson's counsel faced an uphill battle in trying to save his life because Masterson, against their advice, insisted on testifying and then told the jury he was a future danger and that there was nothing to mitigate his offense. We nonetheless accept for purposes

---

[5] Although Masterson raised the issue of organic brain dysfunction in his first habeas with respect to his ineffective assistance of counsel in mitigation claim, the State contends that he did not raise the argument now presented (that organic brain dysfunction was relevant to guilt/innocence until a second habeas proceeding, where it was dismissed by the state court).

of this analysis Masterson's current contention that his attorneys were required to investigate mitigation evidence, even in the face of a client who was fighting all efforts at mitigation.

In *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003), the Court held that counsel must make a sufficient investigation to allow for an informed decision regarding what evidence should be presented for mitigation purposes. In the case at bar, state trial counsel made an investigation during which the lawyers discovered that Masterson had been raised by an abusive father. Evidence of this abuse was presented through Masterson's sister. Counsel hired an investigator; they also hired a future dangerousness expert whom they ultimately did not use because he found Masterson to be a future danger and because the State agreed not to call its expert if they did not call their expert. They also presented the testimony of two deputies to the effect that Masterson was compliant and unthreatening in their custody. The state habeas court found that Masterson's state trial lawyers reviewed the TYC Records and determined that the evidence there was more harmful than helpful.

Masterson faults his state trial counsel for not hiring an expert to opine about the TYC Records and his abusive childhood. His state trial counsel determined that the best approach would be to offer this evidence through Masterson's sister. The state habeas court and the federal district court determined this to be a reasonable strategic decision. *See Masterson*, 2014 U.S. Dist. LEXIS 26226, at *45–46. Masterson does not cite to any Supreme Court case *requiring* expert testimony on this subject. *Wiggins* requires a reasonable investigation, and the state habeas court found that such an investigation was conducted and the evidence of Masterson's difficult childhood was presented through a sympathetic witness. *Id.* Reasonable jurists would not debate the district court's conclusion that the state habeas court's decision was not an unreasonable application of federal law as determined by the Supreme Court.

No. 14-70021

Even if Masterson's counsel was ineffective, the district court determined that Masterson could not show prejudice since the substance of what he contends should have been presented was, in fact, presented in some form or fashion or was "double-edged," doing more harm than good.  *Id.* at *56–57; *see Martinez v. Quarterman*, 481 F.3d 249, 255 (5th Cir. 2007) (counsel is not ineffective for failing to present "double-edged" evidence that helps in part but also casts the defendant in a bad light).

Finally, under *Strickland*, the prejudice prong requires a showing that there is a "reasonable probability" that a juror would have decided the issue differently but for the ineffectiveness of counsel.  466 U.S. at 694. In this case, it was not reasonably probable that the outcome would have been different if the alleged additional evidence were presented, given the heinous nature of the crime, Masterson's lack of remorse, and his inculpatory testimony to the jury during the punishment phase.  *Newbury v. Stephens*, 756 F.3d 850, 874 (5th Cir. 2013) ("In sum, reasonable jurists would not debate the district court's conclusion that, weighing the State's powerful evidence of future dangerousness and moral culpability against [Masterson's] far weaker mitigation evidence, a juror would not have been persuaded to answer the special issues in a manner" that would have avoided the death penalty).

We conclude that Masterson has not demonstrated that jurists of reason would debate the district court's conclusion on this issue, and we therefore deny a COA on this ground.

D.  Ineffective Assistance of Counsel regarding TYC Records

In his first state habeas proceeding, Masterson contended that his counsel was ineffective for failing to introduce the TYC Records into evidence. In the first state habeas proceeding, everyone apparently believed that these records were not introduced.  At some point, it was determined that they were admitted as Exhibit 54 at the outset of the punishment phase (a fact clearly

No. 14-70021

reflected in the transcript). Masterson then switched his contention to an argument under *Rompilla v. Beard*, 545 U.S. 374, 386 (2009), that counsel was ineffective for failing to prepare a rebuttal to the State's use of the TYC Records. In *Rompilla*, the Court concluded that counsel was ineffective for failing to review and prepare to address specific evidence the State clearly intended to make a centerpiece of its case. *Id.*[6]

In this case, by contrast, the state habeas court found that state trial counsel did review the TYC Records. *Masterson*, 2014 U.S. Dist. LEXIS 26226, at \*50. Further, contrasted with *Rompilla,* where the unreviewed records played a central role, these records played such a small role in the punishment phase of the trial that no one seemed to know they had even been admitted. Indeed, it appears that the only use of these records by the State was to cross-examine Masterson very briefly on prior criminal conduct.

The state habeas court determined that counsel made the decision not to use the records because it concluded that the material was either cumulative or "double-edged." *Id.* at \*50–52. Even now, Masterson has difficulty pointing to anything specific that the State used against Masterson from these records that his counsel should have rebutted. *See Coble v. Quarterman*, 496 F.3d 430, 442 (5th Cir. 2007)(general allegation that counsel "should have been better prepared" is insufficient to support a claim of ineffective assistance of counsel).

We conclude that reasonable jurists would not debate the district court's determination of this issue. Accordingly, we deny a COA on this ground.

In sum, Masterson's application for a COA is DENIED.

---

[6] The State argues that this ground is procedurally defaulted for failure to raise it timely in the state court. The district court determined that the issue was properly addressed on the merits. *Masterson*, 2014 U.S. Dist. LEXIS 26226, at \*41 n.8. Because the district court analyzed the claim on the merits, and we readily conclude that it lacks merit, we need not analyze the procedural default question. *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004).