# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20031 & 16-20036

In re:  RICHARD ALLEN MASTERSON,

Movant

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2016

Lyle W. Cayce
Clerk

Motion for an order authorizing
the United States District Court for the
Southern District of Texas to consider
a successive 28 U.S.C. § 2254 application

Before OWEN, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Richard Allen Masterson was convicted by a Texas state court of capital murder and sentenced to death for the 2001 strangulation death of Darin Shane Honeycutt, a crime to which Masterson confessed but later recanted. Following unsuccessful direct appeal and state habeas proceedings, Masterson petitioned the federal district court for habeas relief on several grounds; relief was denied. We then denied a certificate of appealability, and the Supreme Court denied certiorari. *Masterson v. Stephens*, 596 F. App'x 282 (5th Cir.), *cert. denied*, 135 S. Ct. 2841 (2015). Following that decision, Masterson was scheduled for execution on January 20, 2016. He filed a subsequent application for a writ of habeas corpus and a request for a stay in the Texas Court of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20031 & 16-20036

Criminal Appeals (TCCA), which was denied as an abuse of the writ without reaching the merits. *Ex parte Masterson*, No. WR-59,481-03 (Tex. Crim. App. Jan. 11, 2016). His requests for writs of prohibition filed in that court were also denied. *In re Masterson*, No. WR-59,481-04 and WR-59,481-05 (Tex. Crim. App. Jan. 15, 2016).

Masterson now seeks this court's permission to file an application for a successive habeas petition and for stay of execution.[1] He phrases his request as follows:

> Mr. Masterson seeks authorization to file[] the following claims in a successive federal habeas petition:
>
> 1. Mr. Masterson is actually innocent of murder, so his confinement and death sentence violate the Eighth Amendment's ban on cruel and unusual punishment and [the] Fourteenth Amendment's guarantee of substantive due process.
>
> 2. Mr. Masterson is innocent of capital murder, so his confinement and death sentence violate the Eighth Amendment's ban on cruel and unusual punishment and the Fourteenth Amendment's guarantee of substantive due process.
>
> 3. In violation of *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972), the State presented and failed to correct false and misleading expert testimony regarding the cause of the complainant's death.
>
> 4. In violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the State withheld and continues to suppress material exculpatory evidence that its expert witness

---

[1] Masterson's application to our court was filed under case number 16-20031. He simultaneously filed an application with the district court that was transferred to this court and docketed as case number 16-20036. The two were then consolidated.

and attending medical examiner was not qualified to perform the complainant's autopsy, causing him to issue an incorrect opinion on the complainant's cause of death.

5. In violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the State withheld and continues to suppress material impeachment evidence that its expert witness and attending medical examiner falsified his qualifications on his employment application, was unqualified to perform autopsies, regularly perjured himself when testifying about his qualifications to testify as an expert witness, and perjured himself in Mr. Masterson's trial.

A claim previously presented in a prior federal habeas application must be dismissed. 28 U.S.C. § 2244(b)(1). As a prerequisite to filing any other claims through a successive habeas application, Masterson must obtain a certification from this court under § 2244(b)(3). In order to do so, he must make a prima facie showing of entitlement to relief by demonstrating that it is "reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition." *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003). For claims of "newly discovered evidence," the only prong at issue here, the requirements for that showing are set forth in 28 U.S.C. § 2244(b)(2)(B) as follows:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

3

No. 16-20031 & 16-20036

Turning to Masterson's first two issues, Masterson contends that he is "actually innocent" of the offense and, therefore, does not need to make the requisite showing. We are bound by our clear precedent that we do not recognize freestanding claims of actual innocence. *United States v. Fields*, 761 F.3d 443, 479 (5th Cir. 2014) (denying request for a certificate of appealability on a claim of "actual innocence"), *cert. denied*, 135 S. Ct. 2803 (2015). In any event, his claims of actual innocence rest upon alleged problems with the autopsy of his victim that were the subject of previous challenges to his conviction (albeit under different legal theories) and, thus, are not newly discovered. 28 U.S.C. § 2244(b)(2). The State has also presented a letter from Masterson from 2012 again confessing to the crime in question. Although Masterson argues that "new evidence" raises questions about his mental state at various points, his prior application already discussed his history of substance abuse and organic brain dysfunction. These are not "new" points even if Masterson has a "new" expert.[2] We conclude that permission to file a successive habeas petition premised upon the first two issues should be denied.

The final three issues concern the testimony of Paul Shrode, a medical examiner who testified that Honeycutt's death was not an accident.[3] As

---

[2] Masterson points to no case that authorizes a successive habeas application based upon continually evolving psychological research and analysis. Further, this evidence is based upon evolving science since the 2002 trial, not since the April 2013 date of the original federal habeas petition that we use to evaluate "new" evidence.

[3] Curiously, Masterson failed to raise these issues in his application for a subsequent writ filed with the TCCA within the past month. Although he referenced the same issues with Dr. Shrode's credibility that he raises here, he did so only as part of his attack on the underlying autopsy report. He did not raise separate *Brady*, *Giglio*, and *Napue* claims. The State contends, therefore, that these claims are unexhausted and procedurally defaulted. Because we deny relief on other grounds, we need not consider this argument. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Trottie v. Stephens*, 720 F.3d 231, 244 n.6 (5th Cir. 2013) (applying this section to deny a COA on the question of exhaustion where a COA is denied as to the merits).

mentioned above, Masterson's arguments about the cause of the victim's death in this case are not newly discovered. *See id.* The original trial focused on whether Honeycutt was intentionally strangled or was the accidental victim of a sex act gone wrong that resulted in an unexpected and unforeseeable heart attack. It was undisputed that Masterson applied some degree of force to Honeycutt's neck. What was disputed was his intent in doing so and the extent to which Honeycutt's own medical issues (heart arrhythmia and artery blockage) led to his death by a heart attack (rather than hypoxia from strangulation). Masterson's original confession admitted his intent, while his subsequent trial testimony suggested that the death was an accident.

In support of his arguments, Masterson proffers a new witness, Dr. Christena Roberts, who contests Dr. Shrode's findings and methods and contends that Honeycutt was not strangled to death. Although this witness may be "new," the issue of causation is as old as the case itself.[4]

Masterson challenged Dr. Shrode's opinion in his original habeas application to the state court and to the federal court through the argument that his counsel provided ineffective assistance in countering Dr. Shrode's

---

[4] Dr. Roberts's criticisms of the autopsy report are not based upon a "new" factual predicate but upon the original autopsy presented at the original trial, which was previously reviewed by two different defense experts (one at the original trial and one as part of the original state habeas proceeding). Dr. Roberts's "new" criticisms of an old document are not "new" within the meaning of successive habeas applications. *See Dowthitt v. Johnson*, 230 F.3d 733, 742–43 (5th Cir. 2000) (holding that newly submitted affidavits, the substance of which was presented at the original trial, did not qualify as newly discovered evidence); *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) (distinguishing a petitioner's "knowledge of the factual predicate" of a claim with the "gathering [of] evidence in support of that claim"); *cf. Prince v. Thaler*, 354 F. App'x 846, 848 (5th Cir. 2009) (finding new expert testimony insufficient to toll the statute of limitations on a habeas petition because it merely opined that the State's scientific testing process was imperfect and failed to rebut other circumstantial evidence); *Turner v. Epps*, 412 F. App'x 696, 704–06 (5th Cir. 2011) (denying a certificate of appealability because "the opinions expressed in the new expert affidavits . . . indicate[d] a mere disagreement among experts").

testimony. *See Masterson v. Thaler*, No. 4:09-CV-2731, 2014 U.S. Dist. LEXIS 26226, at *20–32 (S.D. Tex. Feb. 28, 2014). The evidence developed in the state habeas proceeding showed that original trial counsel had hired a medical expert who thoroughly examined Dr. Shrode's opinions. *Id.* at *22–28. Ultimately, trial counsel did not call that expert because they were able to obtain concessions from Dr. Shrode on cross-examination on all the points they would have made through their own witness. *Id.* at *26.

In the original state habeas proceeding, Masterson offered the testimony of Dr. Paul Radelat, who attempted to explain how Honeycutt's death could have been unintentional in light of Masterson's trial testimony that he applied force to Honeycutt's neck:

> Expressed in other terms, the choke/sleeper hold applied to the neck of Darin Shane Honeycutt at his request for erotic effect by Defendant Richard Masterson in reasonable medical probability could have produced the desired erotic effect, i.e. decreased consciousness, while almost simultaneously producing the decidedly undesirable effect of cardiac arrhythmia. This transition to cardiac arrhythmia, producing increasing semi-consciousness and eventual unconsciousness may not have been recognizable to Defendant Richard Masterson who may not then have reduced the hold quickly enough to avert irreversible consequences. This sequence of events would be consistent with the facts related by Richard Masterson in his trial testimony.

*Id.* at *29–31.

In light of this evidence, on initial federal habeas review, the district court concluded that Dr. Shrode ultimately conceded every point made by Dr. Radelat's affidavit, except for the ultimate conclusion of whether or not the death was accidental: "In fact, the only meaningful difference between the information derived during cross-examination [at the original trial] and that

in Dr. Radelat's affidavit is an expert opinion that the death was not accidental." *Id.* at *35–36. As the State points out, even as to the question of whether the death was intentional or accidental, Dr. Shrode had to concede that such a judgment is less medical and more evidentiary.

The federal district court also noted the other evidence that was inconsistent with an accidental death: Masterson's confession, his conduct of stealing the victim's car and fleeing the scene, his statements to other people in the aftermath of the death indicating his intent to kill (including a statement to his brother that the idea that Honeycutt died of a heart attack was "bull sh**"), and his subsequent strangling of another victim (who survived) in a similar circumstance within days of Honeycutt's death. *Id.* at *37. As mentioned above, Masterson also wrote a letter in 2012, again confessing to the crime.

Masterson, then, cannot argue that the evidence related to the disagreement over causation is newly discovered. 28 U.S.C. § 2244(b)(2). Instead, he argues that the State has concealed and is currently concealing evidence drawing into question Dr. Shrode's credentials and credibility. Specifically, Masterson contends that the following information should have been provided to Masterson by the State previously:

1.  A 2010 grant of clemency to a petitioner, Richard Nields, in Ohio as a result of a new doctor's review of Dr. Shrode's 1997 autopsy of the victim that revealed "serious flaws" in Dr. Shrode's work.

2.  Misstatements in Dr. Schrode's application to the Harris County Medical Examiner's Office (where he conducted the autopsy at issue) regarding his qualifications to the effect that he had a paralegal degree from Southwest Texas State University when he did not.

3.  Misstatements in Dr. Shrode's application to the El Paso Medical Examiner's Office (after the original trial in this case) that were

7

discussed in a newspaper article dated February 2010 and for which he was fired by El Paso in May of 2010. In a 2007 child protective services trial, these misstatements came to light.

4. After Masterson's trial, Harris County reprimanded Dr. Shrode[5] for his work in a different case and again for having too high a backlog of cases.

Assuming without deciding that these issues are not barred under 28 U.S.C. § 2244(b)(1) (i.e. assuming that the arguments about Dr. Shrode are newly presented), Masterson must still make a showing that it is "reasonably likely" that he can show that the factual predicate for this claim "could not have been discovered previously through the exercise of due diligence" and that the newly discovered facts "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *In re Morris*, 328 F.3d at 740; 28 U.S.C. §§ 2244(b)(2)(B). Given that the autopsy itself and its attendant alleged failings are not "new" in any respect, the only contention that arguably is "new" is the argument that Masterson now has impeachment evidence as to Dr. Shrode that he previously lacked.

We conclude that Masterson has not made the required prima facie showing on either prong of 28 U.S.C. § 2244(b)(2)(B). First, as to due diligence, while our case law has not been entirely clear, we have judged the time of "discovery" as the time at which the matter was first litigated in the federal

---

[5] Masterson's application repeatedly states that Dr. Shrode was "reprimanded" after the original trial in this case but supports that statement only with two documents: (1) a counseling worksheet from 2001 (before the trial) that involved a drug overdose case, not a strangling, and states it was put in Dr. Shrode's file; and (2) a December 2003 memo that Dr. Shrode had too many pending incomplete autopsies. Masterson does not provide any evidence from original trial counsel or review of original trial counsel's file that Dr. Shrode's personnel file was not turned over or made available at the time of trial or that existing documents were missing from it.

habeas proceeding. *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (denying motion to submit a successive habeas petition because petitioner had failed to show that he could not have "discover[ed] the factual basis of his successive claims at the time his first habeas petition was *litigated*" (emphasis added)). Masterson filed his first federal habeas petition in 2009. However, his case was stayed for a time, and thereafter, he was allowed to file an amended petition that included new claims in April of 2013. Thus, we conclude this latter date is the relevant date for judging whether and when Masterson should have previously discovered the alleged misstatements about Dr. Shrode's credentials and his alleged lack of expert ability. *Id.* Masterson offers nothing to explain why he now knows about Dr. Shrode's deficiencies but could not have discovered those problems by April of 2013. He explains only that Dr. Shrode's troubles came to light in jurisdictions outside of the Southern District of Texas (in Ohio and El Paso, in 2010). We conclude that Masterson does not make a prima facie showing of due diligence.

But even assuming *arguendo* that in the exercise of reasonable diligence Masterson could not have discovered this information sooner, Masterson has failed to state a prima facie case that, if informed as to Dr. Shrode's deficiencies, no reasonable factfinder would have found Masterson guilty.[6] *See* 28 U.S.C. § 2244(b)(2)(B). Masterson repeatedly argues that Dr. Shrode lacked the credentials to conduct the autopsy in 2001, but in support of that argument cites only the misstatement regarding Dr. Schrode's paralegal certificate. He

---

[6] The State also argues that Masterson's proposed successive petition is time-barred under 28 U.S.C. § 2244(d). We have previously treated such an argument as premature. *See In re Henderson*, 462 F.3d 413, 417 (5th Cir. 2006). Under § 2244(d)(1)(D), the petition would be timely if filed within a year of the date that the "factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Since we conclude that Masterson did not make a prima facie showing of the diligence necessary to obtain a § 2244(b)(3) certification, we need not address this argument.

cites nothing that would show that a paralegal certificate is a requirement for conducting a competent autopsy. He cites nothing in the record that suggests that the paralegal certificate was an important part of Dr. Shrode's credentials at the original trial. He has not shown that any of Dr. Shrode's underlying medical credentials are false or a sham. When viewed against the overwhelming corroborating evidence[7] of Masterson's guilt, we cannot conclude that Masterson has made a prima facie showing that "no reasonable factfinder" would have found Masterson guilty of this crime if the factfinder had known that Dr. Shrode did not have a paralegal certificate. 28 U.S.C. § 2244(b)(2)(B)(ii).

More basically, with the exception of the misstatement in Dr. Shrode's application to Harris County,[8] all of the supposedly exculpatory impeachment evidence that the State allegedly concealed either had not yet occurred when Dr. Shrode testified at Masterson's trial in 2002 (the alleged misstatements to El Paso, the "reprimands" by Harris County,[9] and the alleged lies in the child protective trial) or could not have been discovered by the State of Texas at that time (the "botched autopsy" of 1997 in Ohio that did not come to light until 2010). Perhaps arguably a prosecutor has a continuing obligation to turn over impeachment evidence that was previously improperly suppressed. However, Masterson points to no authority for the proposition that a prosecutor has a duty to turn over subsequently discovered information about a witness related

---

[7] Masterson attempts to argue away the evidence of his confession and his suspicious actions following Honeycutt's death by arguing that his conduct was the result of his drug-and-alcohol-impaired mind but, as we discuss above, these matters have already been explored in his prior federal habeas case.

[8] There is no evidence that the prosecution team knew about Dr. Shrode's Harris County application misstatement in 2002; we will assume *arguendo*, however, that Dr. Shrode should have known and should have disclosed this fact.

[9] There is some lack of clarity to this allegation as discussed in footnote 5 above.

to events that *had not yet occurred* at the time of trial but would nevertheless, if a time machine were available, be useful to impeach the witness's credibility. *See generally Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009) (discussing temporal limitations on *Brady* duties). Masterson's theory essentially is that if a witness who testifies for the State ever lies or commits other misdeeds thereafter, the defendant is entitled to a new trial. Masterson provides no case that reaches that broadly, nor would such a rule make sense.[10] We conclude that he has failed to make a prima facie case of the second prong as well.

We thus conclude that Masterson has failed to meet the standard for a § 2244(b)(3) certification, and we DENY permission to file a successive habeas petition. In light of the foregoing, we also DENY Masterson's request for a stay of execution.

---

[10] Masterson's reply brief argues that if the State did not know about these issues with Dr. Shrode, then he cannot be faulted for not knowing them. This argument overlooks the timing issue. At the time of trial, there is no showing that anyone was aware of unrevealed issues with Dr. Shrode, because none of his questionable conduct had yet occurred, other than the misstatement in his Harris County application (the "botched" Ohio autopsy had occurred in 1997, but there is no indication anyone knew it was "botched' until 2010). But by 2010, by Masterson's own exhibits, all of the information upon which he now relies was public. Again, he does not explain how he knows this information now but did not know it before April of 2013.