# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-10337

In re: ROSENDO RODRIGUEZ, III,

     Movant

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2018

Lyle W. Cayce
Clerk

## ORDER

Before JONES, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:

Rosendo Rodriguez, III ("Rodriguez") was convicted of capital murder and sentenced to death in 2009. He is scheduled to be executed by the State of Texas on March 27, 2018. Rodriguez challenged his conviction and sentence on direct appeal, in state post-conviction proceedings, and in a federal habeas proceeding; none of these were successful.

On March 19, 2018, eight days before his scheduled execution, he filed a motion to reopen his federal habeas proceedings under Federal Rule of Civil Procedure 60(b). The following day, Rodriguez filed motions for authorization to file a successive petition and to stay execution in this court. On March 22, the district court held that Rodriguez's Rule 60 Motion constituted a successive petition for habeas relief under 28 U.S.C. § 2244(b) and transferred the case to this court.

Because Rodriguez fails to demonstrate he is entitled to file a successive habeas petition, we **DENY** Rodriguez's request to file a successive petition and **DENY** his request for a stay of execution.

**I.**

The facts surrounding Rodriguez's conviction are set forth in our previous opinion. *Rodriguez v. Davis*, 693 F. App'x 276 (5th Cir.), *cert denied*, 138 S. Ct. 389 (2017). Briefly, Rodriguez was convicted and sentenced to death in Texas in March 2009 for the 2005 capital murder of Summer Baldwin, a pregnant prostitute, committed in the course of his committing or attempting to commit aggravated sexual assault. Baldwin's body was discovered in a Lubbock city landfill, stuffed in a suitcase. The prosecution claimed that Rodriguez beat, strangled, and sexually assaulted Baldwin in a hotel room before purchasing the suitcase at a local Walmart, placing her body in it, and discarding it in a dumpster. Baldwin was pregnant at the time of her murder. Because Rodriguez confessed to killing Baldwin, because he maintained that he strangled her in self defense, the trial centered on whether it rose to the level of Texas capital murder. The jury rejected his claim of self-defense and convicted him; he was sentenced to death.

The Texas Court of Criminal Appeals ("TCCA") affirmed Rodriguez's conviction and death sentence on direct appeal. *Rodriguez v. State*, No. AP-75901, 2011 WL 1196871 (Tex. Crim. App. Mar. 2, 2011), *cert. denied*, 565 U.S. 1080 (2011).

Rodriguez presented twenty-one claims for relief during state habeas review, including a claim that trial counsel were ineffective in their investigation and cross-examination of the medical examiner, Dr. Sridhar Natarajan. After hearing testimony from Natarajan, the state habeas court recommended denying relief and the TCCA denied the habeas application. *Ex parte Rodriguez*, No. WR-78,127-01, 2013 WL 1920737 (Tex. Crim. App. May 8, 2013).

Rodriguez pursued similar efforts in his federal habeas proceeding, where he received funding to investigate an unexhausted claim regarding trial counsel's cross-examination of the medical examiner's testimony regarding the cause of death. The district court denied federal habeas relief in 2016, holding "the timing of [Baldwin's] death would have no logical effect on the verdict, and reasonably effective counsel could have concluded there was nothing to be gained by such a detailed explanation of the victim's last moments of life." *Rodriguez v. Davis*, No. 5:13-cv233, 2016 WL 4098339, at *34 (N.D. Tex., Aug. 1, 2016).

This court denied a certificate of appealability ("COA") on May 24, 2017, *Rodriguez v. Davis*, 693 F. App'x 276 (5th Cir. 2017), and the Supreme Court denied Rodriguez's petition for a writ of certiorari on October 30, 2017, *Rodriguez v. Davis*, 138 S. Ct. 389 (2017). The 140th District Court of Lubbock County set Rodriguez's execution date on November 8, 2017.

On February 16, 2018, Rodriguez allegedly discovered a 2015 wrongful termination lawsuit involving Dr. Natarajan and a former employee of the Lubbock County Medical Examiner's Office. On February 20, 2018, Rodriguez filed in the state district court a motion for stay of execution, asking the court to withdraw his execution date pursuant to Texas Code of Criminal Procedure Article 43.141(d)(1) so that he could prepare and file a petition for a successive writ under Tex. Code Crim. Pro. Art. 11.071. Rodriguez argued that the wrongful termination lawsuit bears on the credibility and admissibility of Dr. Natarajan's state trial testimony.

The motion was denied on March 6. On March 12, Rodriguez filed a petition for a successive writ in the state court pursuant to Tex. Code Crim. Pro. Arts. 11.071 § 5 and 11.073. On March 14, he filed a motion for discovery and two days later, on March 16, he filed a motion for stay of execution pending the outcome of his application for a successive writ. The TCCA dismissed his application as an abuse of the writ, without reviewing the merits, and denied his motion for stay of execution. *Ex parte Rodriguez*, WR-78,127-02 (Tex. Crim. App. March 19, 2018).

On March 19, Rodriguez filed a Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b) in the district court, seeking reconsideration of the merits of his ineffective assistance of counsel claim regarding the medical examiner's testimony. While the Rule 60(b) motion was pending, on March 20 Rodriguez moved this court for authorization to file a successive federal habeas petition under 28 U.S.C. § 2244(b), raising four new claims related to his discovery of the wrongful termination lawsuit. According to Rodriguez, his capital murder conviction and sentence violate his Fifth, Sixth, Eighth, and Fourteenth Amendment rights because newly discovered evidence shows the state suppressed evidence of its expert's false and misleading testimony and exculpatory evidence demonstrates Rodriguez's possible innocence of capital murder. The state insists the evidence – which came into existence seven years after Rodriguez's trial – was publicly available to Rodriguez at least a year before the federal district court denied his petition; and in any event, no showing of actual innocence is made with what is at best marginal impeachment evidence.

On March 22, 2018 the district court construed the Rule 60(b) motion as a successive habeas petition and transferred it to this court and alternatively denied the motion; the court also denied a COA. Rodriguez filed both a Notice of Appeal and a motion for COA in this court on March 22. He has, today, March 23, dismissed his appeal and the transferred successive petition.

## II.

Rodriguez seeks relief solely pursuant to 28 U.S.C. § 2244(b)(2)(B), which authorizes successive federal habeas applications based on newly discovered evidence only if the petitioner makes out a prima facie case that (i) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence;" and (ii) the facts in totality would establish "by clear and convincing evidence, that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." This statutory standard is in plain terms rigorous, and Rodriguez fails to meet the test.

Rodriguez's claims center on the filing of a lawsuit in 2015 against Dr. Natarajan, the medical examiner who testified to the manner of the victim's death at his trial, and his employer Lubbock County. The former employee's whistleblower lawsuit claimed that while she was employed in the medical examiner's office from 2013 to 2015, Dr. Natarajan did not perform all of the autopsies and allowed non-certified employees to do much of his work. The plaintiff eventually settled and dismissed her case. The lawsuit was of public record during the pendency of Rodriguez's initial federal court habeas proceeding and was the subject of contemporary local newspaper reports.

Rodriguez had already challenged, in his first petition, the substance of Dr. Natarajan's testimony through an ineffectiveness of counsel claim. To the extent petitioner was concerned about the medical examiner's credibility, the filing of the suit was immediately available to him during his initial

proceedings in federal court. It is certainly arguable that he did not exercise "due diligence" in failing to discover and pursue timely the implications of this suit. *Cf. United States v. Shepherd*, 880 F.3d 734, 744 (5th Cir. 2018) (finding sufficient support for an ineffective assistance of counsel claim where Appellant's attorney failed to learn of a case issued two months after Appellant's arrest, "in the middle of attorney's representation," and this failure led to Appellant's involuntary guilty plea).

But even if the "evidence" of this lawsuit is newly discovered within the meaning of this provision, Rodriguez cannot show that "no reasonable factfinder" would have found him guilty of capital murder. Nor does he show that constitutional error effected his failure to discover the lawsuit.

Most significant here, and unaddressed by Rodriguez in all his last-minute filings, is an affidavit of Garland Timms, a former detective with the Lubbock Police Department, who oversaw the investigation of the victim Summer Baldwin's murder in September 2005. His affidavit, executed February 20, 2018, attests that Dr. Natarajan came to the landfill and examined the victim's body in the suitcase at that site, and that Timms observed Dr. Natarajan perform the victim's autopsy in the morgue the next day. Rodriguez's successive petition depends on his ability to undermine the doctor's conclusions or reject his expert status entirely based on his delegation of duties to others in the office. The Timms affidavit is the only evidence on point about Dr. Natarajan's conduct in this investigation. The State augments this affidavit with citations to three search warrant affidavits by Lubbock police officers who asserted that Dr. Natarajan performed this autopsy.

Rodriguez has had an opportunity to rebut this evidence, since at least February 20. But in any case, the whistleblower lawsuit itself is insufficient to carry his burden of undermining the capital murder conviction. Bear in mind this court's characterization of Section 2244(b)(2)(B)(ii) as "a strict form

of 'innocence,' roughly equivalent to the Supreme Court's definition of 'innocence' or 'manifest miscarriage of justice' in *Sawyer v. Whitley,* [505 U.S. 333 (1992)]." *Johnson v. Dretke*, 442 F.3d 901, 911 (5th Cir. 2006). The whistleblower employee in question wasn't on staff at the medical examiner's office until 2013, whereas the Baldwin autopsy occurred in September 2005. Whatever she may have observed about the operation of the office is hardly relevant to events many years earlier. Moreover, she nonsuited her case against Dr. Natarajan in 2016, indicating specifically that her employment dispute did not cast doubt on the scientific validity of the work that the office had performed.

Further, during the course of his prosecution and post-trial proceedings, Rodriguez has had and taken advantage of numerous opportunities to investigate and critique Dr. Natarajan's performance. An expert consulted pretrial stated that the forensic work in this case was "very good." *See* 7 Evidentiary Hearing Reporter's Record, Defense Exhibit 12 (email from trial counsel dated October 17, 2007). Dr. Natarajan was cross-examined during the state habeas proceeding, where his testimony remained essentially the same as his previous trial testimony. That is, he concluded that the victim was sexually assaulted, that she died from blunt force trauma and asphyxiation and he could not definitely opine whether the victim had died before she was placed in the suitcase or after, at which point she could have succumbed to positional asphyxiation. In addition, Rodriguez was provided funds to hire another forensic expert during the federal habeas proceeding, but this did not eventuate in an offer of new evidence on his part.

The State characterizes the newly discovered evidence as marginal impeachment, at best. Based on the uncontradicted record, we agree. Such

evidence does not demonstrate that "no reasonable factfinder" would have found Rodriguez guilty of capital murder.[1]

A final point is that the newly discovered evidence of the deficient procedures at the medical examiner's office procedures was not, contrary to *Brady,* "suppressed" by the prosecution. The lawsuit was filed in the public record. The prosecutor had no constitutional duty to inform Rodriguez's counsel of "evidence" that only came into existence years after the conviction. *Dist. Attorney's Office for Third Judicial Dist. v. Osborne,* 557 U.S. 52, 68-69 (2009); *see also Estrada v. Healey,* 647 F. App'x. 335, 338 (5th Cir. 2016); *In re Masterson,* 638 F. App'x. 320, 327-28 (5th Cir. 2016). The evidence, as shown above, had little if any bearing on the events in this case. Consequently, there was no antecedent constitutional error that precipitated the inquiry permitted by Section 2244(b)(2)(B)(ii).

Accordingly, the petitioner's motion to file a successive habeas petition is **DENIED**. His motion for stay of execution is also **DENIED**.

---

[1] Rodriguez cites news articles which, he claims, suggest new scientific techniques for gauging the precise cause of this victim's death. Two of the articles were published before or during the pendency of his initial federal habeas case, yet Rodriguez did not seek funding to pursue the techniques the articles describe. In any event, the application of any new techniques here is wholly speculative; Rodriguez offers no assistance to this court as to the admissibility or probativeness of such techniques in this case. Moreover, whether the victim perished before she was placed in the suitcase or was crushed to death in the dumpster is hardly "exonerating." Rodriguez's confession indicates he, a trained medic, found no pulse after he strangled Baldwin and before he went out to buy a suitcase; and he made no effort to revive her.